Sabita J. Soneji (SBN 224262)
*ssoneji@tzlegal.com*
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, California 94612
Telephone: (510) 254-6808

*Counsel for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BRIAN BINGHAM, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SALESFORCE, INC.,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Brian Bingham, individually and on behalf of all others similarly situated ("Plaintiff"), brings this action against Salesforce, Inc. arising out of a data breach involving systems Salesforce operated and controlled that compromised the personal information of millions of consumers. The breach did not result from an isolated or idiosyncratic lapse within Salesforce's internal systems, but instead stemmed from known and foreseeable vulnerabilities in Salesforce's cloud platform through which Salesforce stored, accessed, and processed sensitive consumer personal information.

## NATURE OF ACTION

1. Salesforce is a global cloud-based software company that provides customer relationship management and data-processing platforms to enterprise customers. Through its cloud services, Salesforce hosts, stores, and processes large volumes of sensitive consumer personal information on behalf of its customers, including TransUnion. Salesforce designed, operated, and controlled the cloud-based environment at issue here, including the security architecture governing how customer data was stored and accessed. Salesforce was responsible for implementing reasonable safeguards to protect consumer data entrusted to its platform.[1]

2. Plaintiff received notice of the data breach from TransUnion because TransUnion was Salesforce's customer and the entity that maintained the consumer relationship with Plaintiff. However, the breach itself occurred within Salesforce's cloud-based systems, which Salesforce operated and controlled. Salesforce—not TransUnion—was responsible for securing the environment in which Plaintiff's personal information was stored and accessed, and Salesforce's failures were the proximate cause of the compromise of Plaintiff's data.

3. Regardless of any customer-level configurations, Salesforce retained exclusive control over the platform-level architecture, authentication framework, logging, monitoring, and abuse-detection systems necessary to prevent and detect the intrusion at issue. Customer-level configuration authority did not diminish Salesforce's responsibility to secure the platform-level systems through which the breach occurred.

---

[1] *See* https://www.salesforce.com/blog/shared-responsibility-model/ (last visited Dec. 29, 20205).

4. Accordingly, Salesforce plays a central role in the modern American economy by providing cloud-based platforms that enable enterprise customers to store, manage, and process vast amounts of sensitive consumer personal information. This data—including names, dates of birth, Social Security numbers, driver's license numbers, and other identifiers—holds the keys to a consumer's identity and is routinely relied upon by Salesforce's customers and their partners to make critical financial and operational decisions affecting millions of Americans.

5. Salesforce recognized its responsibility to safeguard sensitive personal information stored and processed on its cloud platform and publicly represented that it is "committed to data privacy" and seeks to "secure and protect the information entrusted to [it] by building, monitoring, and defending a security ecosystem built on a foundation of compliance and accountability." Salesforce likewise represented to its enterprise customers and the public that data security and trust are foundational to its platform, that it proactively manages security risks, and that its cloud environment is designed to protect sensitive information from unauthorized access.[2]

6. In reality, Salesforce failed to live up to those assurances. Despite prior notice of specific social-engineering and access-abuse techniques targeting Salesforce customer environments, Salesforce failed to implement reasonable safeguards at the platform level to prevent unauthorized access to customer data hosted within its cloud environment. As a result of Salesforce's failures, unauthorized actors gained access to Salesforce-hosted systems containing sensitive consumer personal information and exfiltrated Plaintiff's and Class Members' data.[3]

---

[2] *See* Salesforce, *Privacy Statement*; https://www.salesforce.com/company/legal/privacy/ (last visited Dec. 26, 2025).

[3] Prior to the breach, Salesforce publicly acknowledged that its customer environments were being targeted through social-engineering and access-abuse techniques, including voice phishing and credential compromise designed to obtain unauthorized access to Salesforce-hosted systems. See Salesforce, *Protect Your Salesforce Environment from Social Engineering Threats* (Mar. 12, 2025), available at https://www.salesforce.com/blog/protect-against-social-engineering/ (last visited Dec. 26, 2025). Independent threat intelligence reporting likewise identified financially motivated threat actors exploiting such techniques to compromise Salesforce customer instances and exfiltrate data. See Google Cloud Threat Intelligence Group, *Voice Phishing and Data Extortion Targeting Salesforce Environments* (June 2025), available at https://cloud.google.com/blog/topics/threat-intelligence/voice-phishing-data-extortion (last visited Dec. 26, 2025).

7. Here, however, Salesforce failed to properly secure and safeguard the highly valuable personal information of millions of U.S. consumers, including names, Social Security numbers, dates of birth, phone numbers, and home addresses.

8. As a result of Salesforce's inadequate security and breach of its duties, the Private Information of Plaintiff and Class Members was disclosed to unauthorized criminal actors. Plaintiff and Class Members have suffered injuries directly and proximately caused by Salesforce's conduct, including: (i) out-of-pocket expenses to prevent, detect, and remediate identity theft, fraud, and other misuse of their Private Information; (ii) lost time and opportunity costs spent mitigating the consequences of the Data Breach; (iii) the ongoing and heightened risk that their Private Information will be misused in the future; (iv) the risk that the Private Information still held by Salesforce remains vulnerable to further unauthorized disclosure; (v) invasion of privacy and increased risk of fraud and identity theft; and (vi) theft of their Private Information and the resulting loss of control over and privacy in that information.

9. The Data Breach was preventable and stemmed from Salesforce's well-known and avoidable cybersecurity failures, including its failure to address known platform vulnerabilities and its failure to implement and enforce reasonable access controls, authentication requirements, and monitoring within the cloud environment it designed, operated, and controlled.

10. Although Plaintiff's notice letter was issued by TransUnion, the breach itself arose from failures within Salesforce's cloud platform, and Plaintiff's injuries are fairly traceable to Salesforce's conduct in operating and securing that environment.

## PARTIES

11. Plaintiff Brian Bingham is a natural person and citizen and resident of Windsor, California.

12. Salesforce, Inc. ("Salesforce") is a Delaware corporation with its principal place of business in San Francisco, California. Salesforce provides cloud-based customer relationship management and data-processing services to enterprise customers. In that capacity, Salesforce hosted and processed the personal information of Plaintiff and Class Members on behalf of its enterprise customers, including TransUnion, that was compromised in the data breach at issue.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action in which the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, the proposed class consists of more than 100 members, and at least one Class Member is a citizen of a state different from Defendant Salesforce, Inc. This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367.

14. Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to the claims occurred in this District. Salesforce maintains its principal place of business here, where its directors and officers direct corporate activities—including the actions and inactions that led to the Data Breach. Salesforce also derives substantial revenue from business conducted in this District, and Class Members within this District were harmed by the Data Breach.

## FACTUAL ALLEGATIONS

15. Salesforce is a national provider of cloud-based software platforms that enable enterprise customers to store, manage, and process large volumes of sensitive consumer personal information throughout the United States. In that capacity, Salesforce hosts and maintains data on behalf of its customers and controls the cloud-based systems and security architecture used to store and access that information.

16. The information stored and processed within Salesforce's cloud-based systems includes, but is not limited to, highly sensitive personal identifiers such as full names, dates of birth, Social Security numbers, home addresses, and contact information, as well as other personal and identifying data maintained by Salesforce's enterprise customers, including employment-related information, government-issued identification data, device and account information, and related identifiers.[4]

---

[4] *See, e.g.,* Salesforce, *Trust & Compliance Documentation* and *Privacy Information*, describing categories of personal data processed within Salesforce-hosted customer environments, including personal identifiers, government-issued identification data, device and account information, and employment-related information. See also Salesforce, *Security & Privacy Overview*, https://www.salesforce.com/company/privacy/ (last visited Dec. 29, 2025).

17. Salesforce presents itself as a trustworthy provider of enterprise cloud platforms that prioritize the privacy and security of sensitive personal information. Salesforce represents that data security and stewardship are vital to consumer protection and trust, and that it continually invests in improvements designed to protect data held on behalf of consumers and businesses. Salesforce further represents that it seeks to secure and protect information entrusted to its platform by building, monitoring, and defending a security ecosystem grounded in compliance and accountability, and by proactively managing its security programs and continuously investing to safeguard data stored within its cloud environment.

18. Salesforce made uniform representations and omissions regarding the security of its cloud platform to its enterprise customers and the public, while failing to disclose material facts concerning known risks and deficiencies in its data-security practices. Those representations and omissions were intended to, and did, induce enterprise customers to entrust sensitive consumer personal information to Salesforce-hosted systems. Plaintiff and the Class, whose personal information was stored and retained within Salesforce's environment for extended periods, reasonably and foreseeably suffered harm as a result of Salesforce's failure to implement adequate safeguards or to timely disclose the risks associated with its deficient security practices.

**A. The Data Breach**

19. At all material times, Salesforce failed to maintain proper security measures despite its promises of safety and security to consumers.

20. On July 30, 2025, Salesforce learned that a customer account hosted within its cloud environment had been compromised by an organized cybercrime group two days earlier, on July 28, 2025. As a result of the intrusion into Salesforce-hosted systems, the personal information of more than 4.4 million individuals across the United States was exposed.[5]

---

[5] *See* BleepingComputer, *TransUnion breach exposes data of 4.4 million consumers (Aug. 28, 2025),* reporting that attackers accessed consumer data through a compromised customer account hosted in a third-party cloud environment. https://www.bleepingcomputer.com/news/security/transunion-suffers-data-breach-impacting-over-44-million-people/ (last visited Dec. 29, 2025).

21. Salesforce failed to promptly disclose the breach to affected entities and the public after learning of the unauthorized access on or about July 30, 2025, delaying meaningful notice and mitigation for affected consumers.

22. Despite the breach exposing the personal information of approximately 4.4 million U.S. consumers, including Social Security numbers, Salesforce publicly characterized the scope of the incident as limited, minimizing the seriousness of the intrusion and the risks posed to affected individuals.

23. In its public statements regarding the Data Breach, Salesforce failed to provide complete and meaningful information about the nature and scope of the incident. Instead, Salesforce minimized the extent of the breach and the potential harm that affected individuals could experience as a result of the unauthorized access to their personal information.

**B. Data Breaches and the Commercialization of Personal Information**

24. According to Pew Research, 81% of U.S. adults are concerned about how companies use the data they collect about them.[6]

25. Data breaches in the United States have become commonplace–the number of breached records increased from 168 million in 2023 to more than 247 million in 2024–with the goal of criminals being to monetize the stolen data.

26. When a victim's data is compromised in a breach, the victim is exposed to serious ramifications regardless of the sensitivity of the data, including but not limited to identity theft, fraud, decline in credit, inability to access healthcare, as well as legal consequences.[7]

---

[6] *How Americans View Data Privacy,* PEW RESEARCH CENTER (Oct. 18, 2023), https://www.pewresearch.org/internet/2023/10/18/how-americans-view-data-privacy/; *Americans and Privacy: Concerned, Confused and Feeling Lack of Control Over Their Personal Information*, PEW RESEARCH CENTER (Nov. 15, 2019) (last visited on Sep. 15, 2025); https://www.pewresearch.org/internet/2019/11/15/americans-and-privacy-concerned-confused- and-feeling-lack-of-control-over-their-personal-information/ (last visited on Sep. 15, 2025).

[7] *Data Breach Response: A Guide for Business*, FEDERAL TRADE COMMISSION, https://www.ftc.gov/business-guidance/resources/data-breach-response-guide-business

27. The U.S. Department of Justice's Bureau of Justice Statistics has found that "among victims who had personal information used for fraudulent purposes, 29% spent a month or more resolving problems" and that resolution of those problems could take more than a year.[8]

28. The U.S. Government Accountability Office (GAO) has concluded that it is common for data thieves to hold onto stolen data for extended periods of time before utilizing it for identity theft. In the same report, the GAO noted that while credit monitoring services can assist with detecting fraud, those services do not stop it.[9]

29. The FTC has recognized that identity thieves can exploit such information to commit a wide range of crimes, including identity theft and financial fraud. A thriving cyber black market exists where criminals openly trade stolen personal information across numerous underground websites on the dark web.

30. Further, criminals often trade stolen PII on the "cyber black-market" for years following a breach. Cybercriminals can post stolen PII on the internet, thereby making such information publicly available.

31. When companies entrusted with personal data fail to implement industry best practices, cyberattacks and other data exploitations can go undetected for a long period of time. This worsens the ramifications and can even render the harm irreparable.

32. Salesforce knew or should have known that Plaintiff's and Class Members' Private Information is highly sensitive and valuable, both to legitimate entities that store and process such data within enterprise cloud environments and to cybercriminals seeking to exploit that information for fraud and identity theft.

33. Salesforce further knew or should have known that its representations regarding the security of its cloud platform were material to enterprise customers' decisions to entrust consumer personal information to Salesforce-hosted systems, and that consumers whose information was

[8] *Victims of Identity Theft*, U.S. DEPARTMENT OF JUSTICE, http://www.bjs.gov/content/pub/pdf/vit14.pdf (last visited on Sep. 15, 2025).

[9] *Data Breaches – Range of Consumer Risks Highlights Limitations of Identity Theft Services*, U.S. GOVERNMENT ACCOUNTABILITY OFFICE, https://www.gao.gov/assets/700/697985.pdf

stored within those systems would reasonably and foreseeably be harmed if Salesforce failed to implement adequate security safeguards to protect that information.

**C. Salesforce's Duty to Protect Personal Information**

34. Salesforce receives, stores, and accesses extensive individually identifiable personal information within its cloud-based systems on behalf of its enterprise customers. This Private Information includes full names, home addresses, dates of birth, Social Security numbers, other contact information, government-issued identification information, employment-related information, and other sensitive identifiers.

35. Salesforce was prohibited by the Federal Trade Commission Act (the "FTC Act") (15 U.S.C. § 45) from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission (the "FTC") has concluded that an entity's failure to maintain reasonable and appropriate data security for individuals' sensitive personal information is an "unfair practice" in violation of the FTC Act. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

36. The FTC has brought enforcement actions against entities engaged in commerce for failing to adequately and reasonably protect consumer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

37. The FTC has issued numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all decision-making.[10]

38. In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cybersecurity guidelines for businesses.[31] The guidelines note that businesses should protect the personal information that they keep; properly dispose of personal

---

[10] *Start With Security*, FEDERAL TRADE COMMISSION, https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf

information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.

39. The FTC further recommends that entities not maintain PII longer than needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[32]

40. Furthermore, the FTC requires that entities like Salesforce conduct risk assessments, implement and periodically review access control, encrypt consumer information, implement multi-factor authentication, dispose of consumer information securely, maintain a log of authorized users' activity and keep an eye out for unauthorized access, train employees regarding security awareness, and conduct audits, penetration testing, and system-wide scans regularly to test for publicly known security vulnerabilities – all of which if properly implemented would have allowed Salesforce to prevent this Data Breach.

41. Salesforce failed to properly implement basic data security practices, allowing for this data breach to occur, victimizing millions of people—by failing to adhere to many of the FTC protocols and allowing access to a hacker who was able to exfiltrate substantial amounts of consumer data. Salesforce should have instituted a multifaceted security protocol, but failed to do so.

42. Had Salesforce maintained proper protocols and regularly conducted audits to ensure its vulnerabilities and training, it would have prevented this Data Breach.

43. Plaintiff and Class Members had the reasonable expectation that Salesforce would comply with its obligations to keep such information confidential and secure from unauthorized access.

44. Salesforce's failure to provide adequate security measures to safeguard Plaintiff's and Class Members' Private Information is especially egregious because it operates in a field which has recently been a frequent target of scammers attempting to gain access to confidential PII.

**D. Harm to Consumers Resulting from the Data Breach**

45. Plaintiff and the Class have suffered actual harm as a result of Salesforce's conduct. Salesforce failed to institute adequate security measures that led to a data breach. This breach

allowed hackers to access the Private Information, including the names, Social Security numbers, dates of birth, and other personal information of Plaintiff and the Class. Now that the Private Information has been accessed and absconded with, it is available for criminal elements to sell or trade and will continue to be at risk for the indefinite future.

46. Plaintiff and Class Members are now vulnerable to a full gamut of cybercrimes and have been forced to take remedial action.

**1. Phishing**

47. Phishing scammers use emails and text messages to trick people into giving them their personal information, including but not limited to passwords, account numbers, and social security numbers. Phishing frauds are frequently successful, and the FBI reported that people lost approximately $18.7 million to such scams in 2023 alone.[11]

48. Salesforce knew or should have known of the well-documented risks posed by phishing and other social-engineering attacks targeting enterprise cloud environments. Such attacks routinely leverage compromised personal information to obtain unauthorized access to corporate systems and databases, and the Data Breach at issue illustrates the foreseeable consequences of failing to implement reasonable safeguards against these threats.

49. Plaintiff and other consumers who lost information in the Data Breach are now more likely to become victims of digital phishing attacks because of the compromised information.

**2. SIM-Swaps**

50. The data leak can also lead to SIM-swap attacks against Plaintiff and the Class Members. A SIM-swap attack occurs when the scammers trick a telephone carrier into porting the victim's phone number to the scammer's SIM card. By doing so, the attacker is able to bypass two-factor authentication accounts, which are used to access cryptocurrency wallets and other important accounts. The type of personal information that has been leaked poses a profound tangible risk of SIM-swap attacks for the Class.

---

[11] *Internet Crime Report*, FEDERAL BUREAU OF INVESTIGATION, (2023), https://www.ic3.gov/annualreport/reports/2023_ic3report.pdf scams

**3. Identity Theft**

51. As a direct and proximate result of Salesforce's breach of confidence and failure to protect Private Information, Plaintiff and the Class have also been injured by facing ongoing, imminent, impending threats of identity theft crimes, fraud, scams, and other misuse of this Private Information, resulting in ongoing monetary loss and economic harm, mitigation expenses and time spent on credit monitoring, identity theft insurance, credit freezes/unfreezes, expenses and time spent in initiating fraud alerts, contacting third parties; decreased credit scores, lost work time, and other injuries. Salesforce, through its misconduct, has enabled numerous bad actors to sell and profit off of Private Information that belongs to Plaintiff.

**E. Salesforce Failed but Should Have Invested in Appropriate & Necessary Data Security**

52. In the years immediately preceding the Data Breach, Salesforce knew or should have known that enterprise cloud platforms such as its own were frequent targets of cybersecurity attacks.

53. Considering the information and warnings readily available to Salesforce before the Data Breach, Salesforce had reason to be on guard and to increase data security to avoid an attack.

54. Prior to the Data Breach, Salesforce thus knew or should have known that there was a foreseeable risk that Plaintiff's and Class Members' Private Information could be accessed, exfiltrated and utilized by nefarious individuals as the result of a cyberattack.

55. Data security experts advise that "the vast majority of data breaches are preventable" if companies follow widely available advice on data security practices, including "continually audit[ing] and reevaluat[ing]" their data security practices; being aware of and working proactively to counter cybercriminals' evolving techniques and approaches; and training and re-training their employees.[12]

56. Salesforce did not follow this advice, nor did it adequately heed widely reported warnings from cybersecurity professionals that organized cybercrime groups were increasingly

---

[12] Nate Nead, *How To Prevent A Data Breach In Your Company*, FORBES (Jul. 30, 2021), https://www.forbes.com/sites/forbesbusinesscouncil/2021/07/30/how-to-prevent-a-data-breach- in-your-company/?sh=3828f7b918da.

targeting enterprise cloud environments—including platforms used by Salesforce customers—through social-engineering and access-abuse techniques. These warnings made the risk of an intrusion into Salesforce-hosted systems foreseeable. Had Salesforce reasonably prepared its platform and personnel in accordance with industry standards, the Data Breach would have been preventable.

**F. Plaintiff's Experiences**

57. Plaintiff received a data breach notification letter from TransUnion dated August 26, 2025 informing him that his personal information had been compromised in a security incident involving systems used by TransUnion. TransUnion provided notice because it maintained the direct consumer relationship with Plaintiff.

58. At all relevant times, Salesforce maintained custody and control over the cloud-based systems in which Plaintiff's personal information was stored and accessed on behalf of TransUnion.

59. Plaintiff Bingham reasonably expected that the cloud-based systems in which his Private Information was stored would be secured against unauthorized access consistent with industry standards.

60. When Plaintiff's Private Information was accessed and obtained by a third party without his consent or authorization, Plaintiff suffered injury from a loss of privacy.

61. Given the highly sensitive nature of the information involved, the Data Breach has also caused Plaintiff to suffer imminent harm arising from a substantially increased risk of additional fraud, identity theft, financial crimes, and misuse of his Private Information. This highly sensitive information is now in the hands of criminals as a direct and proximate result of Salesforce's misconduct. It is also possible that other forms of information not yet disclosed by Salesforce were also lost in the breach.

62. As a result of the actual harm Plaintiff has suffered and the imminent and substantial risk of future harm, the Data Breach has forced, and will force, Plaintiff to spend significant time and energy dealing with issues related to the Data Breach.

## CLASS ALLEGATIONS

63. Plaintiff brings this action on his own behalf and on behalf of all other persons similarly situated. The Classes which Plaintiff seeks to represent comprise of:

Nationwide Class

**All persons whose private information was accessed, compromised, or stolen in the data breach disclosed on or about August 26, 2025 involving systems hosted and operated by Salesforce (the "Class").**

California Subclass

**All persons residing in the State of California whose private information was accessed, acquired, or otherwise compromised in the data breach disclosed on or about August 26, 2025 involving systems hosted and operated by Salesforce (the "California Subclass")**

These definitions may be further defined or amended by additional pleadings, evidentiary hearings, a class certification hearing, and orders of this Court.

64. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented in that the Class was harmed by the same unfair and unlawful practices. The questions of law and fact common to the Class predominate over questions which may affect individual Class members. Common questions of law and fact include, but are not limited to, the following:

a. Whether Salesforce's failure to implement effective security measures to protect Plaintiff's and the Class's Private Information was negligent;

b. Whether Salesforce's conduct constitutes an unlawful business act or practice under the California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, et seq.);

c. Whether Salesforce violated any statutory duties under the Federal Trade Commission Act (15 U.S.C. § 45) and the California Consumer Privacy Act (Cal. Civ. Code § 1798.100, et seq.);

d. Whether Salesforce represented to Plaintiff and the Class that it would protect Plaintiff's and the Class Members' Private Information;

e. Whether Salesforce owed a duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their Private Information;

f. Whether Salesforce breached a duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their Private Information;

g. Whether Class Members' Private Information was accessed, compromised, or stolen in the Data Breach;

h. Whether Salesforce's conduct caused or resulted in damages to Plaintiff and the Class;

i. Whether Salesforce failed to notify the public of the breach in a timely and adequate manner;

j. Whether Salesforce knew or should have known that its systems, including but not limited to training protocols and policies, left it vulnerable to the Data Breach;

k. Whether Salesforce adequately addressed the vulnerabilities that allowed for the Data Breach; and

l. Whether, as a result of Salesforce's conduct, Plaintiff and the Class are entitled to damages and relief.

65. Plaintiff's claims are typical of the claims of the proposed Class, as Plaintiff and Class Members were harmed by Salesforce's uniform unlawful conduct.

66. Plaintiff will fairly and adequately represent and protect the interests of the proposed Class. Plaintiff has retained competent and experienced counsel in class action litigation and other complex litigation.

67. Plaintiff and the Class have suffered injury because of Salesforce's false, deceptive, and misleading representations and unlawful acts and practices.

68. The Class is identifiable and readily ascertainable. Notice can be provided to Class Members using techniques and a form of notice similar to those customarily used in class actions, and by internet publication, radio, newspapers, and magazines.

69. A class action is superior to other available methods for fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for proposed members of the Class to prosecute their claims individually.

70. The litigation and resolution of the Class's claims are manageable. Individual litigation of the legal and factual issues raised by Salesforce's conduct would increase delay and expense to all parties and the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court.

71. Salesforce has acted on grounds generally applicable to the entire Class, thereby making final injunctive relief and/or corresponding declaratory relief appropriate with respect to the Class as a whole. The prosecution of separate actions by individual Class Members would create the risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for Salesforce.

72. Absent a class action, Salesforce will likely retain the benefits of its wrongdoing. Because of the small size of the individual Class Members' claims, few, if any, Class Members could afford to seek legal redress for the wrongs complained of herein. Absent a representative action, Class Members will continue to suffer losses and Salesforce (and similarly situated companies) will be allowed to continue these violations of law and to retain the proceeds of its ill-gotten gains.

## COUNT I
## NEGLIGENCE
## (On Behalf Of the Class)

73. Plaintiff, individually and on behalf of the Class, herein repeats, realleges and fully incorporates all allegations in all preceding paragraphs.

74. Salesforce owed a duty to Plaintiff and the Class to exercise due care in storing, processing, and safeguarding their Private Information within its cloud-based systems. This duty included, but was not limited to: (a) designing, implementing, and testing security systems to ensure that Private Information was consistently and effectively protected; (b) implementing security

systems compliant with applicable state and federal mandates; (c) implementing security systems consistent with industry practices; and (d) promptly detecting and responding to a data breach.

75. Salesforce's duties to use reasonable care arose from several sources, including those described below. Salesforce had a common law duty to prevent foreseeable harm to others, including Plaintiff and Class Members, who were the foreseeable and probable victims of any inadequate security practices.

76. Salesforce had a relationship with Plaintiff and Class Members that gave rise to a duty of care, as recognized by laws, regulations, and common law. Salesforce was in a position to ensure that the cloud-based systems it designed, operated, and controlled were sufficient to protect against the foreseeable risk of harm from a data breach. Plaintiff and Class Members were required to entrust their Private Information to systems operated through Salesforce's platform via its customers and reasonably expected that Salesforce would take adequate security precautions to safeguard that information. Salesforce controlled the security of the environment in which Plaintiff's and Class Members' Private Information was stored.

77. Salesforce knew or should have known that Plaintiff's and the Class Members' Private Information is information that is frequently sought after by criminals.

78. Salesforce knew or should have known that the unauthorized disclosure of Plaintiff's and the Class Members' Private Information would foreseeably result in harm, including increased risk of identity theft, fraud, and other misuse.

79. Salesforce knew or should have known that its security systems were not adequate to protect Plaintiff's and the Class Members' Private Information from a data breach.

80. Salesforce knew or should have known that timely disclosure of the Data Breach was necessary so that affected entities and individuals could take swift and effective action to mitigate harm and protect Private Information. Salesforce failed to promptly disclose the Data Breach to affected entities and the public after learning of the unauthorized access on or about July 30, 2025. As a result, affected individuals, including Plaintiff and Class Members, were not informed of the Data Breach until on or about August 26, 2025, and some did not receive direct notice.

81. Salesforce's conduct as described above constituted a breach of its duty to exercise due care in safeguarding Plaintiff's and the Class Members' Private Information by failing to design, implement, and maintain adequate security measures to protect that information. Salesforce also failed to implement reasonable measures to detect and respond to the Data Breach in a timely manner.

82. Salesforce's conduct further constituted a breach of its duty to reasonably disclose and respond to the Data Breach once it was discovered.

83. Plaintiff's and the Class Members' Private Information would have remained private and secure had it not been for Salesforce's wrongful and negligent conduct. The unauthorized access to Plaintiff's and the Class Members' Private Information, and all resulting damages, were a direct and proximate result of Salesforce's negligence.

84. Salesforce's negligence was, at least, a substantial factor in causing Plaintiff's and the Class's Private Information to be improperly accessed, disclosed, and otherwise compromised, and in causing Class Members' other injuries arising out of the Data Breach.

85. The damages suffered by Plaintiff and the Class were the direct and reasonably foreseeable result of Salesforce's negligent breach of its duties to adequately design, implement, and maintain security systems to protect Plaintiff's and Class Members' Private Information.

86. Salesforce knew or should have known that its security measures for safeguarding Plaintiff's and Class Members' Private Information were inadequate and left that information vulnerable to unauthorized access.

87. Salesforce's negligence directly caused significant harm to Plaintiff and Members of the Class.

**COUNT II**
**NEGLIGENCE *PER SE***
**(On Behalf Of the Class)**

88. Plaintiff, individually and on behalf of the Class, repeats, realleges, and incorporates by reference all allegations contained in the preceding paragraphs as though fully set forth herein.

89. Salesforce's conduct also constitutes negligence per se based on its violations of duties embodied in Section 5 of the Federal Trade Commission Act ("FTC Act"), which prohibits unfair

or deceptive acts or practices and has long been interpreted to require companies to implement reasonable measures to protect sensitive personal information from unauthorized access and disclosure.

90. Plaintiff does not seek to enforce the FTC Act directly, but pleads violations thereof solely as evidence of negligence and the applicable standard of care.

91. Salesforce violated the standards of conduct reflected in the FTC Act by failing to implement reasonable and appropriate data-security safeguards, failing to comply with applicable industry standards, and failing to timely disclose the Data Breach after learning of the unauthorized access. Salesforce's conduct was particularly unreasonable given the volume and sensitivity of the personal information stored within its systems, the foreseeability of cyberattacks, and the substantial risk of harm to Plaintiff and Class Members.

92. Plaintiff and Class Members are among the class of persons the FTC Act was intended to protect, as the Act is designed to safeguard consumers from unfair practices that expose them to financial harm, identity theft, and loss of privacy.

93. The injuries suffered by Plaintiff and Class Members as a result of the Data Breach are the types of harm the FTC Act was intended to prevent.

94. As a direct and proximate result of Salesforce's negligence per se, Plaintiff and Class Members have suffered damages as described herein, continue to face an increased risk of identity theft and fraud, and are entitled to recover damages in an amount to be proven at trial.

## COUNT III
## INVASION OF PRIVACY
## (On Behalf Of the Class)

95. Plaintiff, individually and on behalf of the Class, repeats, realleges, and incorporates by reference all allegations contained in the preceding paragraphs as though fully set forth herein.

96. Plaintiff and Class Members had a reasonable and legitimate expectation of privacy in their Private Information, which was stored within Salesforce's cloud-based systems and was not intended to be accessed or disclosed to unauthorized third parties.

97. Salesforce owed a duty to Plaintiff and Class Members to safeguard their Private Information and to prevent unauthorized access to and disclosure of that information.

98. Salesforce failed to adequately protect Plaintiff's and Class Members' Private Information and, as a result of its inadequate security practices, enabled unauthorized third parties to access and obtain that information without consent.

99. By failing to implement and maintain reasonable data-security safeguards, Salesforce unlawfully invaded Plaintiff's and Class Members' privacy by, among other things: (a) enabling unauthorized intrusion into Plaintiff's and Class Members' private affairs in a manner that would be highly offensive to a reasonable person; (b) failing to secure Private Information against unauthorized access and disclosure; and (c) allowing Plaintiff's and Class Members' Private Information to be disclosed to unknown third parties without consent.

100. Salesforce knew, or acted with reckless disregard of the fact, that a reasonable person in Plaintiff's and Class Members' position would consider the unauthorized access to and disclosure of their sensitive Private Information to be highly offensive.

101. Salesforce further knew, or acted with reckless disregard of the fact, that entities hosting large volumes of sensitive personal information are frequent targets of cyberattacks, and that inadequate security practices substantially increase the risk of unauthorized access and disclosure.

102. As a proximate result of Salesforce's conduct, Plaintiff's and Class Members' reasonable expectations of privacy in their Private Information were violated, causing them harm, including loss of privacy, emotional distress, and ongoing risk of misuse of their Private Information.

103. Plaintiff seeks injunctive and equitable relief on behalf of the Class, restitution, and all other relief available at law or equity. Unless and until enjoined by this Court, Salesforce's wrongful conduct will continue to place Plaintiff and Class Members at risk of further invasion of their privacy.

104. Plaintiff and Class Members have no adequate remedy at law for these injuries, as monetary damages alone cannot fully redress the loss of privacy and continuing risk resulting from the unauthorized disclosure of their Private Information.

**COUNT IV**
**UNJUST ENRICHMENT**
**(On Behalf Of The Class)**

105. Plaintiff, individually and on behalf of the Class, herein repeats, realleges and fully incorporates all allegations in all preceding paragraphs.

106. Salesforce derives substantial revenue from operating its cloud-based platform for enterprise customers that store and process large volumes of sensitive consumer personal information, including Plaintiff's and Class Members' Private Information.

107. Plaintiff and Class Members conferred a benefit upon Salesforce by entrusting their Private Information to systems hosted and controlled by Salesforce through its enterprise customers, thereby enabling Salesforce to generate revenue from the operation and use of its platform.

108. Salesforce knew that Plaintiff's and Class Members' Private Information was highly sensitive, private, and confidential, and that the value of its platform depended in part on Salesforce maintaining the security and confidentiality of the data stored within its systems.

109. In equity and good conscience, Salesforce should have used a portion of the revenue generated from its platform to implement reasonable and adequate data-security measures to protect Plaintiff's and Class Members' Private Information from unauthorized access.

110. Salesforce was unjustly enriched by saving costs it reasonably should have incurred to implement appropriate security measures, including expenditures on security controls, monitoring, employee training, auditing, and incident-response preparedness.

111. Salesforce's decision to prioritize cost savings and profitability over reasonable data-security investments directly and proximately caused injury to Plaintiff and Class Members when their Private Information was compromised in the Data Breach.

112. Under principles of equity and good conscience, Salesforce should not be permitted to retain the economic benefits obtained through its failure to implement reasonable data-security measures, as doing so would unjustly reward Salesforce for conduct that exposed Plaintiff and Class Members to harm.

113. Plaintiff and the Class have no adequate remedy at law for Salesforce's unjust enrichment, as monetary damages alone are insufficient to fully disgorge the benefits Salesforce wrongfully retained.

114. Salesforce should therefore be required to disgorge all profits and cost savings unjustly obtained as a result of its failure to reasonably safeguard Plaintiff's and Class Members' Private Information.

**COUNT V**
**DECLARATORY JUDGMENT**
**(On Behalf Of the Class)**

115. Plaintiff, individually and on behalf of the Class, herein repeats, realleges and fully incorporates all allegations in all preceding paragraphs.

116. The Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., authorizes this Court to declare the rights and legal relations of the parties and to grant further necessary or proper relief.

117. An actual and ongoing controversy exists between Plaintiff and Class Members, on the one hand, and Salesforce, on the other, concerning Salesforce's present and future obligations to reasonably safeguard Plaintiff's and Class Members' Private Information stored within Salesforce's cloud-based systems.

118. Salesforce owes a duty of care to Plaintiff and Class Members to implement and maintain reasonable data-security measures appropriate to the nature and sensitivity of the Private Information it hosts and processes on behalf of its customers.

119. Salesforce continues to possess and control systems containing Plaintiff's and Class Members' Private Information.

120. Salesforce has not adequately disclosed the specific, verifiable measures it has implemented to remediate the security deficiencies that led to the Data Breach or to prevent similar incidents from recurring.

121. As a result, Plaintiff and Class Members face an ongoing and substantial risk of future harm, including additional unauthorized access to their Private Information, due to Salesforce's failure to fully and adequately address the security weaknesses that caused the Data Breach.

122. Plaintiff and Class Members therefore seek a declaration that Salesforce's existing data-security measures were inadequate to satisfy its duties of reasonable care, and that Salesforce is obligated to implement and maintain reasonable and appropriate security safeguards to protect Private Information from unauthorized access and disclosure.

123. Plaintiff further seeks prospective injunctive relief requiring Salesforce to implement and maintain reasonable data-security measures consistent with applicable law and industry standards:

a. conducting periodic security assessments, testing, and audits;

b. implementing reasonable access controls, monitoring, and incident-response procedures; and

c. taking other corrective actions reasonably necessary to prevent future data breaches.

124. Unless enjoined, Salesforce's conduct will continue to expose Plaintiff and Class Members to irreparable harm for which there is no adequate remedy at law.

125. The balance of equities favors injunctive relief because the hardship to Plaintiff and Class Members from continued exposure to data-security risks outweighs any burden on Salesforce, which is already obligated under existing law to employ reasonable data-security practices.

**COUNT VI**
**VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE § 17200, et seq.**
**(On Behalf of Plaintiff and the California Subclass)**

126. Plaintiff, individually and on behalf of the California Subclass, herein repeats, realleges and fully incorporates all allegations in all preceding paragraphs.

**A. Unfair Practices**

127. The California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, prohibits unfair business practices, including conduct that causes substantial consumer injury, is not outweighed by countervailing benefits, and could not reasonably have been avoided by consumers.

128. Salesforce's conduct, as alleged herein, caused substantial injury to California consumers by exposing their sensitive Private Information to unauthorized access as a result of inadequate data-security practices.

129. Salesforce's failure to implement and maintain reasonable data-security safeguards conferred no countervailing benefit to consumers and demonstrated a disregard for the privacy and security of California residents.

130. Salesforce's conduct contravenes established public policy favoring the protection of consumer personal information, as reflected in state and federal law, including Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, and California's comprehensive consumer privacy and data-security statutory framework.

131. Plaintiff and the California Subclass could not reasonably have avoided the injuries caused by Salesforce's conduct, as they had no meaningful ability to control how Salesforce secured the systems in which their Private Information was stored.

132. The injuries caused by Salesforce's conduct outweigh any purported benefits associated with its data-handling practices.

133. Salesforce could have achieved its legitimate business objectives through lawful and non-deceptive means, including by implementing reasonable data-security measures consistent with industry standards.

134. Salesforce's unfair conduct is ongoing, as it continues to possess and control systems containing California consumers' Private Information without adequately demonstrating that the security deficiencies that led to the Data Breach have been fully remedied.

135. Plaintiff and the California Subclass seek injunctive and equitable relief enjoining Salesforce from continuing its unfair business practices and requiring Salesforce to implement reasonable safeguards to protect consumer Private Information.

**B. Unlawful Practices**

136. The UCL also prohibits unlawful business practices, which include violations of other state and federal laws and duties.

137. Salesforce's conduct, as alleged herein, constitutes unlawful business practices by violating duties and obligations imposed by, among other things:

- Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45;
- California statutes and regulations governing the protection of personal information and reasonable data-security practices;
- Applicable common law duties requiring reasonable care in safeguarding sensitive personal information.

138. Salesforce knew or should have known that its failure to implement reasonable data-security safeguards exposed consumers to a foreseeable risk of harm and violated these duties.

139. Salesforce's failure to maintain adequate data-security practices therefore constitutes an unlawful business practice under the UCL.

140. Salesforce's wrongful conduct is ongoing and forms part of a generalized course of conduct affecting thousands of California consumers.

141. Plaintiff and the California Subclass suffered injury in fact and lost money as a result of Salesforce's unlawful conduct, including costs incurred to mitigate identity-theft risk and expenses associated with credit monitoring, fraud prevention, and identity-protection measures.

142. Plaintiff and the California Subclass seek equitable relief under the UCL, including:

(a) an order enjoining Salesforce from continuing its unlawful practices;

(b) an order requiring Salesforce to implement reasonable and adequate data-security measures consistent with applicable law and industry standards; and

(c) restitution of monies or benefits unjustly retained as a result of Salesforce's unlawful conduct.

143. Equitable relief is necessary because legal remedies are inadequate to prevent ongoing and future harm resulting from Salesforce's data-security failures.

144. Injunctive relief is further necessary to prevent Salesforce from continuing to mislead the public regarding the adequacy of its data-security practices and to protect California consumers from future data breaches.

**COUNT VII**
**VIOLATION OF THE CALIFORNIA CONSUMER PRIVACY ACT, CAL. CIV. CODE § 1798.100, et seq.**
**(On Behalf of Plaintiff and the California Subclass)**

145. Plaintiff, individually and on behalf of the California Subclass, repeats and realleges all preceding paragraphs.

146. Salesforce is a "business" within the meaning of the California Consumer Privacy Act ("CCPA"), Cal. Civ. Code § 1798.140(d).

147. Plaintiff and members of the California Subclass are "consumers" within the meaning of Cal. Civ. Code § 1798.140(g) whose personal information was stored and processed within Salesforce's systems.

148. The CCPA requires businesses that collect or maintain personal information to implement and maintain reasonable security procedures and practices appropriate to the nature of the information in order to protect it from unauthorized access, exfiltration, theft, or disclosure. Cal. Civ. Code § 1798.150(a).

149. Salesforce failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the personal information stored within its systems, resulting in unauthorized access to and disclosure of Plaintiff's and the California Subclass's personal information.

150. As a direct and proximate result of Salesforce's failure to maintain reasonable security, Plaintiff and members of the California Subclass suffered an unauthorized access and exfiltration of their personal information, giving rise to damages and statutory relief under Cal. Civ. Code § 1798.150.

151. Plaintiff and the California Subclass seek relief authorized by Cal. Civ. Code § 1798.150, including statutory damages, injunctive and declaratory relief, and any other relief the Court deems proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment and relief on all causes of action as follows:

A. **Injunctive Relief**:

- Enjoining Salesforce from continuing its unlawful and unfair business practices;
- Requiring Salesforce to implement and maintain reasonable security measures to safeguard consumer private information;
- Mandating the timely deletion, secure archiving, or anonymization of consumer data that is no longer necessary for legitimate business purposes;
- Requiring Salesforce to implement robust employee training, policies, and protocols to ensure the protection of consumer private information;
- Ordering Salesforce to promptly notify affected enterprise customers and appropriate parties of any future data breaches, and to take reasonable steps to ensure that notice is provided to affected individuals consistent with applicable law.

B. **Restitution**:

- Ordering Salesforce to return, restore, or otherwise make whole all money or property wrongfully acquired through its unlawful or unfair practices, consistent with Cal. Bus. & Prof. Code § 17203.

C. **Compensatory Damages**:

- Awarding damages to Plaintiff and the California Subclass for actual economic losses resulting from Salesforce's conduct;
- Awarding statutory damages as authorized under Cal. Civ. Code § 1798.150 (California Consumer Privacy Act).

D. **Equitable Relief**:

- Granting any other equitable relief necessary to prevent future harm, including but not limited to measures addressing Salesforce's ongoing or systematic mishandling of consumer private information.

E. **Attorneys' Fees and Costs**:

- Awarding reasonable attorneys' fees, costs, and expenses pursuant to Cal. Code Civ. Proc. § 1021.5, Cal. Civ. Code § 1798.150, and any other applicable law.

F. **Pre-and Post-Judgment Interest**:

- Awarding interest as permitted by law.

7. **Further Relief**:

- Granting such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff respectfully demands a trial by jury for all claims.

DATED: December 29, 2025,

*/s/ Sabita J. Soneji*
Sabita J. Soneji (SBN 224262)
*ssoneji@tzlegal.com*
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, California 94612
Telephone: (510) 254-6808

*Counsel for Plaintiff*